UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
LARRY KLAYMAN,                                       )
                                                    )
      Plaintiff,                                  )
                                                    )
v.                                                   )    Civil Action No. 14-00472 RDM
                                                    )
CENTRAL INTELLIGENCE                                 )
AGENCY,                                              )
                                                    )
      Defendant.                                  )
_____)

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

      This is a Freedom of Information Act ("FOIA") case that concerns a request

made to defendant, the Central Intelligence Agency ("CIA"), for records relating to

Raymond Allen Davis.  Plaintiff asserts that Davis was or is an agent of the CIA.

The CIA responded by refusing to confirm or deny the existence of such records, a

so-called Glomar response.  See  Phillippi v. CIA, 546 F.2d 1009, 1011 (D.C. Cir.

1976).

      As grounds for this motion, defendant asserts that there are no genuine

issues of material fact in dispute and that the fact of the existence or non-existence

of responsive records is exempt from disclosure under FOIA Exemption (b)(1), 5

U.S.C. § 552(b)(1) (protecting from disclosure information classified pursuant to

Executive Order in the interest of national security or foreign policy), and FOIA

Exemption (b)(3), 5 U.S.C. § 552(b)(3) (protecting information exempted from disclosure by statute).  In support of this motion, defendant is submitting herewith its statement of material facts not in genuine dispute, a memorandum of points and authorities with a supporting declaration, and a proposed order reflecting the requested relief.

                    Respectfully submitted,

                    VINCENT H. COHEN, JR., D.C. Bar #471489
                    Acting United States Attorney
                    for the District of Columbia

                    DANIEL F. VAN HORN, D.C. Bar #924092
                    Chief, Civil Division

                    BY:  /s/ *Fred E. Haynes*
                    FRED E. HAYNES, D.C. Bar #165654
                    Assistant United States Attorney
                    555 Fourth Street, N.W., Room E-4110
                    Washington, D.C.  20530
                    202.252.2550
                    fred.haynes@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
LARRY KLAYMAN,                          )
                                        )
          Plaintiff,                    )
                                        )
v.                                      )   Civil Action No. 14-00472 RDM
                                        )
CENTRAL INTELLIGENCE                    )
AGENCY,                                 )
                                        )
          Defendant.                    )
_____)

## DEFENDANT'S STATEMENT OF MATERIAL FACTS
## AS TO WHICH THERE IS NO GENUINE DISPUTE

Defendant submits the following statement of material facts as to which

there is no genuine issue:

1.  By a letter dated 31 July 2013, Larry Klayman submitted a Freedom of

Information Act ("FOIA") request to the Information and Privacy Coordinator of

the Central Intelligence Agency ("CIA") , alleging: "[o]n at least one occasion, the

Douglas County, Colorado District Attorney's Office ("D.A.'s Office") contacted

and communicated with the [CIA], seeking information regarding Raymond Allen

Davis a former and/or current CIA agent who was recently convicted of assaulting

an individual, Jeffrey Maes."   Declaration of Martha M. Lutz, Information Review

Officer, CIA, ¶ 1, attached as Exhibit 1 to the memorandum in support of

defendant's motion for summary judgment (hereafter, "Lutz Declaration"). (The letter appears as Exhibit A to the Lutz Declaration.)

2. By that letter, Plaintiff, who represents Mr. Maes, sought the following information from the CIA:

a. Any and all communications with the Douglas County, Colorado District Attorney's Office that refer or relate in any way to Mr. Davis and/or Mr. Maes;

b. Any and all information that refers or relates to any and all communications with the Douglas County, Colorado District Attorney's Office regarding Mr. Davis and/or Mr. Maes;

c. Any and all information that refers or relates to any communications with the Douglas County, Colorado District Attorney's Office regarding any lawsuits between Mr. Davis and Mr. Maes and/or any other litigation involving Mr. Davis and/or Mr. Maes;

d. Any and all information that refers or relates in any way to information released to and/or made available to the Douglas County, Colorado District Attorney's Office;

e. Any all information that refers or relates to government agencies deciding to investigate Mr. Davis, including, but not limited to, any investigations of Mr. Davis conducted in his capacity as an agent for the CIA;

f. Any and all communications with the civil court and/or the judge in the civil matter regarding Mr. Maes and/or Mr. Davis in a case styled Jeffrey Maes, et al. v. Raymond Allen Davis (Case Number 2011CV2953).

Exhibit A to the Lutz Declaration.

3. By a letter dated 23 December 2013, the CIA notified Plaintiff:

We have completed a thorough review of your request and have determined in accordance with section 3.6(a) of Executive Order 13526, the CIA can neither confirm nor deny the

existence or nonexistence of records responsive to your request. The fact of the existence or nonexistence of requested records is currently and properly classified and is intelligence sources and methods information that is protected from disclosure by section 6 of the CIA Act of 1949, as amended, and section 102A(i)(l) of the National Security Act of 1947, as amended. Therefore, your request is denied pursuant to FOIA exemptions (b)(1) and (b)(3).

A copy of this letter is attached as Exhibit B to the Lutz Declaration.

4.  By a letter dated 6 February 2014, Plaintiff appealed the CIA's denial of his FOIA request.  Plaintiff asserted: "The CIA effectively claimed a national security exemption for an altercation at an Einstein Bros. bagel store.  We are thus appealing the decision of the CIA as there is no plausible way in which this altercation is a matter of national security, and no exemptions should have been granted."   A copy of this letter is attached as Exhibit C to the Lutz Declaration.

5.  By a letter dated 25 April 2014, the CIA denied the appeal, reasserting its Glomar response and stating that it could neither confirm nor deny the existence or nonexistence of records responsive to Plaintiff's request because the fact of the existence or nonexistence of records was properly classified and protected from disclosure under FOIA exemptions (b)(1) and (b)(3), 5 U.S.C. § 552(b)(1) and (b)(3).  A copy of CIA's 25 April 2014 letter is attached as Exhibit D to the Lutz Declaration.

3

The Glomar Response.

6.  The CIA's response to Plaintiff's FOIA request – neither confirming nor denying the existence or nonexistence of records – is commonly referred to as a Glomar response.  Such a response is provided for under Executive Order 13526, section 3.6(a): "An agency may refuse to confirm or deny the existence or nonexistence of requested records whenever the fact of their existence or nonexistence is itself classified under this order or its predecessors."  Lutz Declaration, ¶ 10.

7.  The mere confirmation or denial of the existence of the responsive records sought by plaintiff would reveal a classified fact – namely, whether the CIA has or had a covert relationship with Mr. Davis.  Lutz Declaration, ¶ 10.

8.  The CIA must use the Glomar response consistently in all cases where the existence or non-existence of records responsive to a FOIA request is a classified fact:

> If the CIA were to invoke a Glomar response only when it actually possessed responsive records, the Glomar response would be interpreted as an admission that responsive records exist.  This practice would reveal the very information that the CIA must protect in the interest of national security.

Lutz Declaration, ¶ 16.

FOIA Exemption (b)(1).

9.   FOIA exemption (b)(1) provides that FOIA does not require the production of records that are: "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy" and "are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1).

10.   Consistent with sections 1.1(a) and 3.6(a) of Executive Order 13526, the declarant, Martha M. Lutz, a senior CIA official who holds original classification authority at the Top Secret level, see Lutz Declaration, ¶ 2, has determined that the existence or nonexistence of the requested records is a properly classified fact that concerns "intelligence activities" and "intelligence sources and methods" under section 1.4(c) of the Executive Order, the records are owned by and under the control of the U.S. Government, and the unauthorized disclosure of the existence or nonexistence of requested records reasonably could be expected to result in damage to national security.

FOIA Exemption (b)(3).

11.   FOIA exemption (b)(3) provides that FOIA does not apply to matters that are:

> specifically exempted from disclosure by statute (other than
> section 552b of this title), provided that such statute (A)
> requires that the matters be withheld from the public in such a
> manner as to leave no discretion on the issue, or (B) establishes

5

> particular criteria for withholding or refers to particular types of
> matters to be withheld . . . .

5 U.S.C. § 552(b)(3).

12.   Section 102A(i)(1) of the National Security Act of 1947, as amended,

50 U.S.C. § 403-1(i)(1) (the "National Security Act"), provides that the Director of

National Intelligence ("DNI") "shall protect intelligence sources and methods from

unauthorized disclosure."

13.   The National Security Act constitutes a federal statute which "requires

that the matters be withheld from the public in such a manner as to leave no

discretion on the issue."  5 U.S.C. § 552(b)(3).

14.   Under the direction of the DNI pursuant to section 102A, and consistent

with section 1.6(d) of Executive Order 12333, the CIA is authorized to protect CIA

sources and methods from unauthorized disclosure.[1]  Lutz Declaration, ¶ 29.

15.   Acknowledging the existence or nonexistence of records reflecting a

classified connection to the CIA would reveal information that concerns

intelligence sources and methods, which the National Security Act is designed to

protect.  Lutz Declaration, ¶ 29.

---

[1] Section 1.6(d) of Executive Order 12333, as amended, *reprinted in* 50 U.S.C.A. §
401 note at 25 (West Supp. 2009), and as amended by Executive Order 13470, 73
Fed. Reg. 45,323 (July 30, 2008) requires the Director of the Central Intelligence
Agency to "[p]rotect intelligence and intelligence sources, methods, and activities
from unauthorized disclosure in accordance with guidance from the [DNI][.]"

6

16.  Section 6 of the Central Intelligence Agency Act of 1949, as amended, 50 U.S.C. § 403g, provides that the CIA shall be exempted from "the provisions of any other law" (in this case, FOIA) "which require the publication or disclosure of the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency."

17.  Under section 6, the CIA is exempt from disclosing information that would reveal whether a particular individual is a covert CIA officer, as well as information relating to the CIA's core function – foreign intelligence collection through its intelligence sources and methods.  Lutz Declaration, ¶ 30.

18.  The Central Intelligence Agency Act of 1949 therefore constitutes a federal statute which "establishes particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3).  Lutz Declaration, ¶ 30.

19.  Acknowledging the existence or nonexistence of the requested records about Davis would require the CIA to disclose information about the names and functions of its personnel, an outcome that section 6 expressly prohibits.  Lutz Declaration, ¶ 30.

20.  The fact of the existence or nonexistence of records that would reflect whether or not Davis had or has a classified connection to the CIA is exempt from

disclosure under FOIA exemption (b)(3) pursuant to both the National Security Act
and the Central Intelligence Agency Act of 1949.  Lutz Declaration ¶ 30.

21.  Acknowledgement of the existence or nonexistence of CIA records
regarding Davis, irrespective of the content of such putative records, would reveal
classified information implicating intelligence sources, methods, and activities.
Lutz Declaration, ¶ 31.

22. The only appropriate response to the FOIA request was for the CIA to
neither confirm nor deny the existence or nonexistence of the requested records
under FOIA exemptions (b)(1) and (b)(3).  Lutz Declaration ¶ 31.

Respectfully submitted,

VINCENT H. COHEN, JR., D.C. Bar #471489
Acting United States Attorney
for the District of Columbia

DANIEL F. VAN HORN , D.C. Bar #924092
Chief, Civil Division

BY  /s/ Fred E. Haynes
FRED E. HAYNES, D.C. Bar #165654
Assistant United States Attorney
555 Fourth Street, N.W., Room E-4110
Washington, D.C. 20530
202.252.2550
fred.haynes@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
LARRY KLAYMAN,                          )
                                        )
        Plaintiff,                      )
                                        )
v.                                      )   Civil Action No. 14-00472 RDM
                                        )
CENTRAL INTELLIGENCE                    )
AGENCY,                                 )
                                        )
        Defendant.                      )
_____)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff represents Jeffrey Maes in a civil action against Raymond Allen Davis, who was convicted in 2013 of assaulting Maes in Douglas County, Colorado.  In the course of that representation, plaintiff submitted a Freedom of Information Act ("FOIA") request to the Central Intelligence Agency ("CIA") seeking information relating to any communication by the CIA with the Douglas County District Attorney's Office concerning Davis, as well as other information concerning Davis's alleged relationship with the CIA.  The CIA responded to the request by refusing to confirm or deny the existence or nonexistence of the requested records, a so-called Glomar response.  This response was based on (a) Executive Order 13526, which addresses the classification of information relating to national defense or foreign policy, (b) the Central Intelligence Act of 1949, and

(c) the National Security Act of 1947.  The assertion of the <u>Glomar</u> response was proper, and this motion for summary judgment should be granted.

## I.  STATEMENT OF FACTS

Defendant incorporates here the preceding Statement of Material Facts As To Which There Is No Genuine Issue.

## II.  LEGAL STANDARD

"FOIA mandates broad disclosure of government records to the public, subject to nine enumerated exemptions." <u>Wolf v. CIA</u>, 473 F.3d 370, 374 (D.C.Cir. 2007) (citation omitted).  Exemption 1 protects matters "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and ... in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). Exemption 3 covers matters "specifically exempted from disclosure by statute," provided that such statute leaves no discretion on disclosure or "establishes particular criteria for withholding or refers to particular types of matters to be withheld." <u>Id.</u>, § 552(b)(3). These exemptions cover not only the content of protected government records but also the fact of their existence or nonexistence, if that fact itself properly falls within the exemption.  <u>Wolf</u>, 473 F.3d at 374.  Agency refusal to confirm or deny the existence or nonexistence of records responsive to a request is known as a <u>Glomar</u> response.  <u>Id.</u> (citing <u>Phillippi v. CIA</u>, 546 F.2d 1009, 1011 (D.C. Cir.1976)),

which concerned the existence of records regarding a ship named the Hughes Glomar Explorer).  (This summarization of the law is taken from Larson v. Department of State, 565 F.3d 857, 861 (D.C. Cir.2009).)

The federal agency defendant in a FOIA case is entitled to summary judgment if it can demonstrate that there exists no genuine issue of material fact with regard to the agency's compliance with the FOIA, Steinberg v. United States Department of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994), with the facts viewed in the light most favorable to the requester, Weisberg  v. Department of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984).  An agency that has withheld information or refused to confirm or deny that it possesses such information can carry its burden on summary judgment by affidavit or declaration.  See Larson, 565 F.3d at 862. "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'"  Wolf, 473 F.3d at 374-75.

## III.  ARGUMENT

The sole issue in this case is whether defendant's assertion of the Glomar response was proper.  "The CIA 'may refuse to confirm or deny the existence of records where to answer the FOIA inquiry would cause harm cognizable under an FOIA exception.'"  Wolf, 473 F.3d at 374 (citing Gardels v. CIA, 689 F.2d 1100. 1103 (D.C. Cir. 1982), and other cases).

A. <u>The Nature of a Glomar Response</u>

The FOIA represents a balance struck by Congress "'between the right of the public to know and the need of the Government to keep information in confidence.'" <u>John Doe Agency v. John Doe Corp.</u>, 493 U.S. 146, 152 (1989). Thus, while the FOIA generally requires agency disclosure, Congress recognized "that legitimate governmental and private interests could be harmed by release of certain types of information and provided nine specific exemptions under which disclosure could be refused." <u>FBI v. Abramson</u>, 456 U.S. 615, 621 (1982); <u>see</u> 5 U.S.C. § 552(b). These exemptions "cover not only the content of protected government records but also the fact of their existence or nonexistence, if that fact itself properly falls within the exemption." <u>Larson</u>, 565 F.3d at 861.

As this Circuit held in <u>EPIC v. National Security Agency</u>, 678 F.3d 926, 931 (D.C. Cir. 2012), "an agency may . . . refuse to confirm or deny the existence or nonexistence of response records [to a FOIA request] if the particular FOIA exemption at issue would itself preclude the acknowledgment of such documents." <u>Id.</u>; <u>Roth v. United States Department of Justice</u>, 642 F.3d 1161, 1178 (D.C. Cir. 2011); <u>Wolf</u>, 473 F.3d at 374. The "<u>Glomar</u> response" takes its name "from the <u>Hughes Glomar Explorer</u>, a ship built (we now know) to recover a sunken Soviet submarine, but disguised as a private vessel for mining

4

manganese nodules from the ocean floor." Bassiouni v. CIA, 392 F.3d 244, 246 (7th Cir. 2004).

When a Glomar response is invoked, the Court must decide whether the agency's declaration provides "sufficiently detailed and persuasive reasons for taking the position that it will neither confirm nor deny the existence or non-existence of any responsive records." Wheeler v. CIA, 271 F.Supp.2d 132, 141 (D.D.C. 2003). Such a declaration "enjoy[s] a presumption of good faith, which may not be rebutted by purely speculative claims." Mack v. Department of Navy, 259 F. Supp.2d. 99, 105 (D.D.C. 2003) (internal quotations omitted).

B.   The Glomar Response Was AppropriatelyAsserted In This Case.

1.   Exemption (b)(1)

Section 1.4 of Executive Order 13526 provides that information shall be considered for classification if it falls within one (or more) of eight specifically enumerated categories of information. Under Section 3.6(a) of Executive Order 13526, "[a]n agency may refuse to confirm or deny the existence or nonexistence of requested records whenever the fact of their existence or nonexistence is itself classified under this order or its predecessors." The categories of classified information at issue here are those found in Section 1.4(c), which includes intelligence activities and intelligence sources and methods. Lutz Declaration, ¶¶ 10, 19, 20.

Ms. Lutz, an original classification authority, has concluded that confirming the existence or nonexistence of the requested records reasonably could be expected to result in damage to national security.  Id. at ¶ 27.

As she explains:

> . . . If the CIA were to provide responses either confirming or denying that it possesses records revealing a relationship with any particular individual, in the absence of an acknowledged overt connection to this individual, this admission could identify the CIA's intelligence sources, methods, and activities.  Such responses, therefore, reasonably could be expected to cause serious damage to U.S. national security.  The potential damage to national security would be magnified many times over if the CIA were to respond to all FOIA requests for information on specific individuals by identifying on which persons it does maintain classified records and on which it does not.

> Lutz Declaration, ¶ 22.

> Section 6 of the Central Intelligence Act of 1949, 50 U.S.C. § 403g, specifically exempts the CIA from the provisions of any other law requiring the disclosure of information regarding, among other things, the names and titles of CIA employees.  Furthermore, recognizing how vital it is not to expose the cover of the CIA's covert officers, Congress also has passed the Intelligence Identities Protection Act, 50 U.S.C. § 421 et seq., which imposes criminal penalties on those who disclose the identities of CIA covert officers or agents.

> Lutz Declaration, ¶ 23.

> . . .For CIA officers to effectively and clandestinely collect intelligence and conduct operations around the world, they cannot openly admit that they work for the

CIA.  Consequently, in carrying out its statutory mission of gathering and disseminating intelligence, the CIA must employ a variety of cover mechanisms to conceal the true affiliation of its officers who are involved in intelligence collection and other authorized operations.

Lutz Declaration, ¶ 24.

Exposing a covert officer's ties to the CIA could jeopardize the physical safety of past, present, and prospective human sources.  In addition, disclosure of a covert officer's affiliation with the CIA could jeopardize the officer's safety.

Lutz Declaration, ¶ 25.

Identification of a covert CIA officer also decreases the professional effectiveness of the covert officer by diminishing the usefulness in future intelligence operations.  Substantial energy and money is invested to train and equip covert officers.  Every experienced, well-trained officer is a valuable CIA resource and losing the ability to deploy covert officers by disclosing an officer's CIA affiliation would represent a substantial loss to the CIA and its ability to accomplish its mission.

Lutz Declaration, ¶ 26.

In sum, merely acknowledging that the CIA possesses records responsive to Plaintiff's FOIA request would reveal that the CIA had a clandestine relationship with Mr. Davis.  On the other hand, acknowledging the absence of such records would suggest that Mr. Davis was not covertly connected to the CIA.  In either case, such an admission would implicate intelligence sources and methods in a manner harmful to U.S. national security because it would reveal to Plaintiff and the public facts about the CIA's clandestine intelligence activities.  As explained above, that disclosure reasonably could be expected to cause damage to the national security.  Thus,

this information is currently and properly classified, and consequently, it is exempt from disclosure under FOIA exemption (b)(1).

Lutz Declaration, ¶ 27.

The Lutz Declaration amply demonstrates that a <u>Glomar</u> response was appropriate in this case to prevent disclosure of classified information concerning intelligence activities, sources, and methods.  This Court should defer to Ms. Lutz's assessment of the likely repercussions to the national security from disclosure of the information requested by plaintiff.  <u>See</u>, <u>e.g.</u>, <u>Center for National Security Studies v. Department of Justice</u>, 331 F.3d 918, 927 (D.C. Cir. 2003) (under FOIA "we have consistently deferred to executive affidavits predicting harm to the national security, and have found it unwise to undertake searching judicial review."); <u>Weissman v. CIA</u>, 565 F.2d 692, 697 (D.C. Cir. 1977) ("Few judges have the skill or experience to weigh the repercussions of disclosure of intelligence information.").

### 2.  Exemption (b)(3)

Pursuant to Exemption (b)(3), information may be withheld in response to a FOIA request if the information is "specifically exempted from disclosure by statute . . . [provided that such statute] (i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of

matters to be withheld." 5 U.S.C. § 552(b)(3).  Exemption (b)(3) was promulgated in recognition of other, agency-specific statutes limiting the disclosure of information held by the agency, and it incorporates those statutes within the exemptions to FOIA.  See Balridge v. Shapiro, 455 U.S. 345, 352-353 (1982); Essential Information, Inc. v. U.S. Information Agency, 134 F.3d 1165, 1166 (D.C. Cir. 1998).

Under Exemption (b)(3), judicial review is limited to (1) whether the withholding statute qualifies as an Exemption  (b)(3) statute, and (2) whether the withheld material satisfies the criteria of the exemption statute.   See CIA v. Sims, 471 U.S. 159, 167 (1985); Fitzgibbon v. CIA, 911 F.2d 755, 761 (D.C. Cir. 1990).

Section 102A(i)(1) of the National Security Act of 1947, as amended, 50 U.S.C. § 403-1(i)(1) (the "National Security Act"), provides that the Director of National Intelligence ("DNI") "shall protect intelligence sources and methods from unauthorized disclosure."  Id.  The National Security Act qualifies as an Exemption 3 statute.  CIA v. Sims, 471 U.S. at 180; American Civil Liberties Union v. Department of Defense, 628 F.3d 612, 619 (D.C. Cir. 2011).

Under the direction of the DNI pursuant to section 102A, the CIA is authorized to protect CIA sources and methods from unauthorized disclosure.[2]

_____

[2] Section 1.6(d) of Executive Order 12333, as amended, *reprinted in* 50 U.S.C.A. § 401 note at 25 (West Supp. 2009), and as amended by Executive Order 13470, 73 Fed. Reg. 45,323 (July 30, 2008) requires the Director of the Central Intelligence

Case 1:14-cv-00472-RDM   Document 16   Filed 06/03/15   Page 20 of 22

Lutz Declaration, ¶ 29.  Acknowledging the existence or nonexistence of records

reflecting a classified connection of an individual to the CIA would reveal

information that concerns intelligence sources and methods, which the National

Security Act is designed to protect.  Lutz Declaration, ¶ 29.

The CIA also invoked Section 6 of the Central Intelligence Agency Act of

1949, as amended, 50 U.S.C. § 403g (the "CIA Act"), which provides that the CIA

shall be exempted from the provisions of "any other law" (in this case, FOIA)

which requires the publication or disclosure of, inter alia, the "functions" of the

CIA.  Pursuant to this statute, the CIA is exempt from disclosing information

relating to its core functions, including clandestine intelligence activities.  The CIA

Act qualifies as an Exemption 3 statute.  CIA v. Sims, 471 U.S. at 180.  Section 6

exempts the CIA from disclosing "the organization, functions, names, official

titles, salaries, or numbers of persons employed by the Agency."  50 U.S.C. §

403g.  This language authorizes the CIA to refuse to confirm or deny the existence

or nonexistence of an employment relationship between it and an individual.

Minier v. CIA, 88 F.3d 796, 801 (9th Cir. 1996).

Accordingly, the fact of the existence or nonexistence of records that would

reflect whether or not there was a classified connection between Davis and the

CIA is exempt from disclosure under FOIA Exemption (b)(3) pursuant to both the

Agency to "[p]rotect intelligence and intelligence sources, methods, and activities
from unauthorized disclosure in accordance with guidance from the [DNI][.]"

National Security Act and the CIA Act.  Therefore, the CIA properly refused to

confirm or deny whether it had records responsive to plaintiff's FOIA request.

IV. <u>Conclusion</u>

For the reasons set forth above, defendant's motion for summary judgment

should be granted.

Respectfully submitted,

VINCENT H. COHEN, JR., D.C. Bar #471489
Acting United States Attorney
for the District of Columbia

DANIEL F. VAN HORN , D.C. Bar #924092
Chief, Civil Division

BY  /s/ Fred E. Haynes
FRED E. HAYNES, D.C. Bar #165654
Assistant United States Attorney
555 Fourth Street, N.W., Room E-4110
Washington, D.C. 20530
202.252.2550
<u>fred.haynes@usdoj.gov</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
LARRY KLAYMAN,                          )
                                        )
        Plaintiff,                      )
                                        )
v.                                      )   Civil Action No. 14-00472 RDM
                                        )
CENTRAL INTELLIGENCE                    )
AGENCY,                                 )
                                        )
        Defendant.                      )
_____)

<u>ORDER</u>

Upon consideration of defendant's summary judgment motion and the

response thereto, it is this _____ day of _____, 2015,

        ORDERED that the motion is granted; and it is further

        ORDERED that this case is dismissed with prejudice.  This is a final,

appealable order.

UNITED STATES DISTRICT JUDGE

12